AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | |
|---|---|
| United States of America <br> v. <br> JEREMIAH WAREHAM <br><br> *Defendant(s)* | ) ) ) ) ) ) ) <br> Case No.   2:24-mj-00010 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  February 10, 2024  in the county of  Berkeley  in the  _____  District of  South Carolina , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2262(a)(1) | Interstate Violation of a Protection Order |

This criminal complaint is based on these facts:

See attached affidavit.

☒ Continued on the attached sheet.

_____
Complainant's signature

Brian R. Clarity, FBI Special Agent
*Printed name and title*

Sworn to me via telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:  February 29, 2024

_____
Judge's signature

City and state:   Charleston, South Carolina            Mary Gordon Baker, United States Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**</u>

I, Brian R. Clarity, do hereby depose and state:

<u>**BACKGROUND**</u>

1. That I am a Special Agent with the Federal Bureau of Investigation and have been so since March 2010.  I am currently assigned to the FBI's Columbia Division, Low Country Violent Crime Task Force. As an FBI Special Agent, I have received extensive training in a variety of investigative and legal matters of violations of federal and state law. Your affiant is "an investigative or law enforcement officer of the United States" within the meaning of Section 2510 (7) of Title 18, <u>United States Code</u>. Your affiant is therefore, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, <u>United States Code</u>. During my employment with the FBI, I have participated in various violent crime investigations along with other FBI Special Agents (SAs) and other Task Force Officers (TFOs).

2. The details and information stated herein are a compilation of facts and events investigated by me and other Law Enforcement Officers, who investigated and confirmed their veracity or overseen their development. I have drafted this affidavit for the limited purpose of establishing probable cause for certain violations of law.  Therefore, I have not included all of the facts of this investigation.

<u>**FACTS IN SUPPORT OF PROBABLE CAUSE**</u>

3. On or about January 19, 2023, the Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida (the "Court") issued an Injunction for Protection Against Domestic Violence ("the Protection Order") on behalf of Victim 1, an adult female residing in Okaloosa County, Florida, and Victim 1's three biological minor children, Minor Victim 1 (a 16-year-

old minor child), Minor Victim 2 (an 8-year-old minor child) and Minor Victim 3 (an 11-year-old minor child) (collectively referred to as the "Victims"), case number 2023DR000064FV.

4. Victim 1's current spouse ("Spouse"), an adult male legally married to Victim 1, was not named in the Protection Order.

5. The respondent of the order, JEREMIAH WAREHAM ("WAREHAM"), personally attended the hearing before the Court, wherein the Court heard testimony and found, based on facts specific to the case, Victim 1 is a victim of domestic violence or had reasonable cause to believe he/she is in imminent danger of becoming a victim of domestic violence by WAREHAM.

6. WAREHAM is the biological father of Minor Victim 1. WAREHAM has no relationship to Minor Victim 2 or Minor Victim 3.

7. The terms of the Protection Order stated it shall be in full force and effect for the period of 18 months and could not be changed by either party, alone or together. The Protection Order further defined, in Section III, certain willful violations such as: going to or being within 500 feet of the Victims' residence, going to the Victims' place of employment, or school, telephoning, contacting, or communicating directly or indirectly by mail, e-mail, fax, telephone, through another person or in any other manner with the Victims.

8. Section III(2)(b) of the Protection order specifies that the Protection Order includes Victim 1's three minor children, specifically naming all three, to include Minor Victim 1, Minor Victim 2, and Minor Victim 3.

9. The Protection Order specifically advised WAREHAM of Title 18, U.S.C. Section 2262, stating it is a federal criminal felony offense, punishable by up to life imprisonment,

depending on the nature of the violation, to cross state lines or enter Indian country for the purpose of engaging in conduct that is prohibited in the Protection Order.

10. WAREHAM was further ordered to surrender to the Okaloosa County Sheriff's Department any firearms and ammunition in his possession; and was advised in the Order that any person against whom a protective order has been issued is also subject to local and federal criminal laws, including the provisions of 18 U.S.C. § 922(g)(8).

11. The Order indicates that it was hand-delivered to the Respondent, WAREHAM, in open court. Your Affiant viewed an acknowledgement page attached to the protection order wherein WAREHAM's, signature appears.

12. On or about June 15, 2012, Victim 1, while residing on a U.S. Miliary Base in the state of Delaware, was notified by a Delaware State Trooper regarding a threat made by WAREHAM. The threat was reported by a third-party to the Delaware State Police. Victim 1 was advised WAREHAM threatened to kill Victim 1 and kidnap Minor Victim 1. Military police moved Victim 1 along with Victim 1's immediate family members to a separate location for their safety. Victim 1 understood that WAREHAM was arrested approximately one week later for an outstanding warrant for unrelated charges.

13. Victim 1 advised that prior to being contacted by the Delaware State Police, Victim 1 was notified by a mutual acquaintance of Victim 1 and WAREHAM regarding a threat WAREHAM had made to harm Victim 1 and kidnap Minor Victim 1. Victim 1 and WAREHAM previously lived with the mutual acquaintance when they were engaged in a relationship. Victim 1 assumed that the mutual acquaintance reported the threat made by WAREHAM to law enforcement.

14. Victim 1 advised that he/she did not pursue a protection order at that time due to the arrest and subsequent conviction of WAREHAM for unrelated charges.

15. On or about August 17, 2015, the Family Court for the State of Delaware, in and for Kent County, ordered that Minor Victim 1 shall be legally considered the child of Victim 1 and Spouse.  From the date of August 17, 2015, and forward, Victim 1 and Spouse were entitled to the same rights and privileges, and subject to the same duties and obligations as if Minor Victim 1 was born to Victim 1 and Spouse.

16. Following the Summer of 2022, Victim 1 learned that Minor Victim 1 had been communicating with WAREHAM via text messaging.  Minor Victim 1 spent that summer residing with Victim 1's mother. After learning of this communication, Victim 1 took precautions by installing parental controls on Minor Victim 1's cellular phone.

17. In or about January 2023, exact date unknown, Victim 1 became aware of a package received by Minor Victim 1 containing small gifts.  Victim 1 observed the return address on the package was colored over with black ink.  Victim 1 and Spouse shined a flashlight on the blacked out return address and were able to make out the city name of Goose Creek.  Victim 1 was aware that WAREHAM's registered address was in Goose Creek, South Carolina.  The continued contact between WAREHAM and Minor Victim 1, along with WAREHAM having the home address of the Victims, prompted Victim 1 to seek the Protection Order.

18. On or about February 8, 2024, WAREHAM, a registered sex offender residing in Goose Creek, South Carolina, reported, in person, to the offices of the Sex Offender Registry with the Berkeley County Sheriff's Office, within the District of South Carolina.  This meeting was in accordance with the terms of WAREHAM's supervision in the State of South Carolina. WAREHAM is a registered sex offender as a result of a 2013 conviction in the state of

4

Pennsylvania. During this meeting with the Sex Offender Registry, photos of WAREHAM were taken and posted to the South Carolina Public Sex Offender Registry website.

19. On or about February 9, 2024, Victim 1, along with Minor Victim 1, Minor Victim 2, Minor Victim 3, and other extended family members traveled to the area of Montgomery, Alabama to attend an amateur sports tournament.

20. On or about February 10, 2024, Minor Victim 1 and Minor Victim 2, along with a third extended family member ("Witness"), were present at the Montgomery Zoo, outside of the District of South Carolina. While at the Montgomery Zoo, Witness observed Minor Victim 1 engaged in an extended conversation with an adult male as they walked through the zoo. Minor Victim 1 advised Witness the adult male was Minor Victim 1's biological father. Witness took a photograph of the adult male and sent the photograph to Witness' parent who identified the male as WAREHAM.

21. Victim 1 subsequently viewed the photograph of the adult male from the zoo and recognized him as WAREHAM. Victim 1 is personally familiar with WAREHAM through a previous relationship lasting several years. Victim 1 further personally observed WAREHAM on or about January 19, 2023, during the hearing for the Protection Order. Between January 19, 2023, and February 10, 2024, Victim 1 periodically viewed photographs of WAREHAM posted to the public sex offender registry website.

22. After viewing the photo sent by Witness, police in Montgomery, Alabama were contacted to report the violation of the Protection Order. By the time police arrived at the Montgomery Zoo, WAREHAM had left. A police report was filed with the Montgomery Police Department, 2024-00017319, dated February 10, 2024.

5

23. Following the contact between WAREHAM and Minor Victims 1 and 2 on or about February 10, 2024, Victim 1 reviewed the contents of Minor Victim 1's cellular telephone. Victim 1 discovered that Minor Victim 1 was using a Facebook account by the name of "Leo Smith" to communicate via Facebook Messenger with a Facebook account by the name of "Jeremiah Wareham." Communications were observed that pre-dated January 19, 2023, the date the Protection Order was issued.

24. Victim 1's sister provided the contents of the communications between the "Leo Smith" Facebook account and the "Jeremiah Wareham" Facebook account, as found on Minor Victim 1's cellular telephone, to law enforcement.

25. A search of the Facebook social media platform surfaced an account by the name "Jeremiah Wareham," wherein a posted photo depicting WAREHAM is featured on the accounts publicly available profile.

26. Messages between the "Leo Smith" Facebook account and the "Jeremiah Wareham" Facebook account continued almost daily from January 19, 2023, through February 10, 2024.

27. On or about January 19, 2023, the date the Protection Order was issued, a Facebook Messenger message was sent from the account "Jeremiah Wareham" to "Leo Smith" stating, "I'm sorry bud I tried. I provided she lied under oath multiple times but bc of "my past" they gave it to her for 18 months".

28. On or about December 25, 2023, a video was sent from the "Jeremiah Wareham" Facebook account to the "Leo Smith" Facebook account. The video depicts WAREHAM manipulating a firearm while demonstrating how to operate it. In the video WAREHAM demonstrates how to release and load the magazine, how to lock and release the slide, and how to conduct a safety check. This video was sent following a text conversation in which "Leo Smith" advised

that he/she found a "secret room with the guns." Victim 1 advised that Victim 1 along with immediate family, including Minor Victim 1, were staying with extended family on or about December 25, 2023.

29. On or about January 18, 2024, the following messages, among others, were exchanged between Facebook account "Leo Smith" and Facebook Account "Jeremiah Wareham":

> Jeremiah Wareham: I still love you
> Jeremiah Wareham: A lot
> Leo Smith: fr?
> Leo Smith: i think that means you should be my boyfriend or something
> Jeremiah Wareham: What fr then you would be my girlfriend or something wouldn't you
> Leo Smith: i would
> Leo Smith: that'd be awesome
> Jeremiah Wareham:  Fr you would be down with that. That would mean no more flirting with other guys even when you get drunk

30. On or about February 9, 2024, the following messages, among others, were exchanged between Facebook account "Leo Smith" and Facebook Account "Jeremiah Wareham":

> Leo Smith: my older cousin is taking me and my brother to the zoo
> Leo Smith: no one else lol
> Jeremiah Wareham:  Nice

31. On or about February 10, 2024, the following messages were exchanged, among others, between Facebook account "Leo Smith" and Facebook Account "Jeremiah Wareham":

> Jeremiah Wareham: And you should warn your mom to not call the police
> Leo Smith: soo we're gonna leave at 1015, go to starbucks, then head to the zoo lol
> Jeremiah Wareham: Well before you take off to hug me might want to let them know that you will feed the lions if they call them ppl

32. Following the incident at the Montgomery Zoo, the Victims returned to their home in Florida on a U.S. Military Base.  On or about February 13, 2024, the United States Air Force Office of Special Investigations conducted a recorded interview of Minor Victim 1.  During this interview Minor Victim 1 denied having plans to run away with WAREHAM but advised that WAREHAM stated he would help Minor Victim 1 run away if he/she was serious about it.

7

Minor Victim 1 further disclosed WAREHAM would initiate inappropriate conversations involving sex and would send Minor Victim 1 half-naked photos of his upper body. Minor Victim 1 expressed confusion about his/her relationship with WAREHAM stating that he/she felt a parental bond but also romantic feelings for WAREHAM.

## CONCLUSION

33. Based on the facts set forth above, I submit that there is probable cause to believe that on or about February 10, 2024, in the District of South Carolina and elsewhere, JEREMIAH WAREHAM traveled in interstate commerce with the intent to engage in conduct that would violate Section III of the Protection Order issued in the Circuit Court of the First Judicial Circuit, in and for Okaloosa County, Florida, that prohibited contact and communication and physical proximity to the Victims, and did subsequently engage in such conduct, in violation of Title 18, United States Code, Section 2262(a)(1) (Interstate Violation of a Protection Order).

This Affidavit has been reviewed by AUSA Dean H. Secor.

Brian R. Clarity, Special Agent
Federal Bureau of Investigation

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE.

This __29th__ day of February 2024
Charleston, South Carolina

The Honorable Mary Gordon Baker
United States Magistrate Judge

8